UNPUBLISHED

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

CALVIN EUGENE SWANN,
Petitioner-Appellant,

v.

No. 98-20

JOHN TAYLOR, Warden, Sussex I
State Prison,
Respondent-Appellee.

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
Jackson L. Kiser, Senior District Judge.
(CA-96-752-R)

Argued: December 2, 1998

Decided: February 18, 1999

Before MICHAEL and TRAXLER, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Affirmed in part, vacated in part, and remanded by unpublished opin-
ion. Judge Traxler wrote the opinion, in which Judge Michael and
Senior Judge Butzner joined.

_____

COUNSEL

ARGUED: Mark Evan Olive, LAW OFFICES OF MARK E.
OLIVE, P.A., Tallahassee, Florida, for Appellant. Donald Richard
Curry, Senior Assistant Attorney General, OFFICE OF THE ATTOR-
NEY GENERAL, Richmond, Virginia, for Appellee. **ON BRIEF:**

Robert Edward Lee, Jr., VIRGINIA CAPITAL REPRESENTATION RESOURCE CENTER, Richmond, Virginia, for Appellant. Mark L. Earley, Attorney General of Virginia, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

TRAXLER, Circuit Judge:

Calvin Eugene Swann ("Swann"), whom the Commonwealth of Virginia has sentenced to death and life imprisonment on convictions for capital murder and robbery, respectively, appeals from a judgment denying his application for a writ of habeas corpus brought under 28 U.S.C.A. § 2254 (West 1994 & Supp. 1998). For the reasons set forth below, we affirm in part, vacate in part, and remand with instructions.

I.

The following factual recitation draws primarily from the facts set forth by the Virginia Supreme Court in Swann v. Commonwealth, 441 S.E.2d 195 (Va. 1994). On the evening of November 7, 1992, Swann roamed the streets of Danville, Virginia in search of a house to rob for money to purchase cocaine. He approached the house of Conway Forrest Richter ("Richter") upon noticing that the front door was open. Wearing a mask and armed with a shotgun, Swann opened the storm door to Richter's house and entered the living room, where he observed Richter eating supper at his kitchen table. Swann pointed his shotgun at Richter and said, "This is a stickup." Richter reacted by charging toward Swann, and Swann shot him in the chest from a distance of eight to ten feet. Richter collapsed on the front porch and died within thirty minutes. Swann fled the scene after removing approximately $60 from Richter's wallet.

2

In the course of investigating Richter's killing, Danville police suspected Swann and focused their attention on him after learning that he had disposed of a shotgun several weeks after the killing. During police questioning, Swann confessed to killing Richter and prepared a written statement to that effect. He was then indicted by a grand jury in the Circuit Court of the City of Danville on five charges arising from the killing, including capital murder and robbery.

The matter proceeded to trial solely on the charges of capital murder and robbery. At the conclusion of the guilt phase, the jury returned a verdict of guilty on both charges, and fixed Swann's punishment for robbery at life imprisonment. At the conclusion of the penalty phase, the jury found there to be a probability that Swann "would commit criminal acts of violence that would constitute a continuing serious threat to society." Va. Code Ann.§ 19.2-264.4.C. (Michie 1995 & Supp. 1998). Based upon that finding, the jury fixed Swann's punishment for capital murder at death. The trial court thereafter imposed the sentences recommended by the jury. The Virginia Supreme Court, on direct appeal, affirmed Swann's convictions and sentences against numerous assignments of error. See Swann, 441 S.E.2d at 207. The United States Supreme Court denied Swann's petition for a writ of certiorari. See Swann v. Virginia, 513 U.S. 889 (1994).

Swann subsequently sought collateral relief by bringing a petition for a writ of habeas corpus before the Virginia Supreme Court, which dismissed the petition in a summary order. In so doing, the court determined that consideration of many of the claims presented was barred under the procedural rules set forth in Hawks v. Cox, 175 S.E.2d 271, 274 (Va. 1970) (holding that claims adjudicated on their merits on direct appeal will not be considered in state habeas proceeding), and Slayton v. Parrigan, 205 S.E.2d 680, 682 (Va. 1974) (holding that claims that could have been but were not raised on direct appeal will not be considered in state habeas proceeding). The court then expressed its finding of "no merit" with respect to Swann's remaining claims. J.A. 773.

On December 6, 1996, Swann filed the present application in the district court, seeking a writ of habeas corpus under § 2254.[1] The dis-

_____

**1** Because Swann filed his application after the April 24, 1996 effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA") of

3

trict court, adopting the report and recommendation of a magistrate judge to whom the matter had been referred, entered judgment denying the application. The district court subsequently denied Swann's motion to alter or amend the judgment under Rule 59(e) of the Federal Rules of Civil Procedure. We then granted Swann's application for a certificate of appealability.

II.

Swann asserts that the trial court's refusal to appoint a psychiatrist to evaluate him and to assist in the preparation and presentation of his defense gave rise to a constitutional violation under Ake v. Oklahoma, 470 U.S. 68 (1985). In Ake, the Supreme Court held that when an indigent criminal defendant's sanity at the time of the offense is likely to be a significant factor at trial, the Due Process Clause of the Fourteenth Amendment requires that a state "assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense." Id. at 83. The Court further held that such assistance is constitutionally mandated when a capital defendant's future dangerousness is to be a significant factor at the penalty phase of the trial. See id. at 83-84.

A.

We begin our analysis of Swann's Ake claim by examining the relevant proceedings in the state trial court. Following indictment, Swann moved under Va. Code Ann. § 19.2-264.3:1.A (Michie 1995 & Supp. 1998) for the appointment of a mental health expert to evaluate him and to assist in the preparation and presentation of his defense. The trial court granted the motion and appointed Dr. Stanton

_____

1996, Pub.L. No. 104-132, 110 Stat. 1214, our analysis of the claims presented herein is governed by §§ 2254(d) and (e) as amended by § 104 of the AEDPA. See Lindh v. Murphy, 117 S. Ct. 2059, 2067-68 (1997). The Commonwealth does not contend that it has taken the necessary measures to qualify as an "opt-in" state for purposes of § 107 of the AEDPA such that the provisions of § 107 apply. See Sexton v. French, 163 F.3d 874, 876 n.1 (4th Cir. 1998).

E. Samenow ("Dr. Samenow"), a clinical forensic psychologist, for those purposes.

After conducting a three-day evaluation of Swann, Dr. Samenow prepared a report in which he noted that Swann had a history of mental illness, for which he had been previously hospitalized. Dr. Samenow concluded, however, that Swann was "not impaired by mental illness" at the time that he shot and killed Richter. J.A. 38. In a separate report, Dr. Samenow expressed his conclusion that Swann was "competent to stand trial" on the pending charges. J.A. 39.

Pursuant to Va. Code Ann. § 19.2-264.3:1.E, Swann provided notice to the trial court of his intention "to present the testimony of an expert witness to support a claim in mitigation" in case he should be convicted of capital murder. On the Commonwealth's motion, the trial court directed that Swann be evaluated by Dr. Arthur Centor ("Dr. Centor"), a clinical forensic psychologist, "concerning the existence or absence of mitigating circumstances relating to [Swann's] mental condition at the time of the offense." Va. Code Ann. § 19.2-264.3:1.F. Dr. Centor evaluated Swann and concluded that Swann revealed no symptoms of mental illness.

Although the trial court had already appointed Dr. Samenow, who accordingly evaluated Swann and rendered conclusions regarding his mental condition, Swann brought a second motion for the appointment of a mental health expert under Va. Code Ann.§ 19.2-264.3:1.A. This time, however, Swann explicitly requested the appointment of a psychiatrist.[2] In so doing, Swann noted that his purpose in bringing the motion was not "to obtain a more favorable report" than that which Dr. Samenow had prepared. J.A. 40. Rather, Swann requested appointment of a psychiatrist to assist him in the "presentation of mitigation evidence should [he] be convicted of capital murder." J.A. 40. In particular, Swann represented that a psychiatrist was necessary "for further evaluation on the issue of

_____

[2] A psychiatrist is a physician who specializes in "that branch of medicine which deals with the study, treatment, and prevention of mental disorders." Dorland's Illustrated Medical Dictionary 1383 (27th Ed. 1988). Apparently, Dr. Samenow and Dr. Centor were not physicians with the right to prescribe medications.

5

schizophrenia as it relates to [him] and medications for said disease and the effects of medications upon [him]. . .." J.A. 40. He argued that because Dr. Samenow was not a psychiatrist, Dr. Samenow was "not able nor qualified to examine [Swann] as to these issues, nor testify to same." J.A. 40. Swann supported this argument with a letter written by Dr. Samenow to the trial court days before the motion was filed. In the letter, Dr. Samenow stated in relevant part:

> I recommend that the defense be afforded the opportunity to have a psychiatrist examine Mr. Swann. Inasmuch as there are issues of medication (surrounding hospitalization and other aspects of his functioning), I am not qualified medically to render an opinion.

J.A. 42. Swann indicated that Dr. Miller M. Ryans ("Dr. Ryans"), a psychiatrist who had previously treated him, was"available and willing" to evaluate Swann. J.A. 40.

The trial court ultimately denied Swann's motion for the appointment of a psychiatrist, explaining that "the Court had previously appointed a clinical psychologist" to evaluate Swann. J.A. 381. There is no indication from the record that Swann renewed his motion for the appointment of a psychiatrist at any point before or during the trial proceedings. In any event, as will be discussed later in this opinion, Dr. Ryans did testify in Swann's behalf, thereby making available to Swann, at trial, testimony from a psychiatrist who was trained and licensed to deal with aspects of medication relevant to Swann's situation.

During the penalty phase of the trial, the Commonwealth sought a jury finding of future dangerousness, see Va. Code Ann. § 19.2-264.4.C, by presenting extensive evidence of past violent acts committed by Swann. In particular, the jury heard evidence that Swann had robbed employees at a fast-food restaurant in May 1974, and that he had struck an individual while participating in a burglary and grand larceny in September 1992. The jury also learned that Swann, in March 1989, had broken into the home of Rose Marie Gibson at approximately 11:00 p.m. and had entered her bedroom. When Gibson informed Swann that she recognized him, he had hit her on the head with a brick. See Swann, 441 S.E.2d at 205.

6

The Commonwealth also offered evidence that in October 1992, Swann had robbed three different women of their pocketbooks. One such woman, Irene Harris Carter ("Carter"), testified that Swann shot at her and hit her on the head with a gun when she resisted. The jury learned that Swann's robbery and murder of Richter occurred within only ten days of the Carter robbery. Finally, the evidence demonstrated that less than two weeks after the Richter murder, Swann assaulted a police officer who had arrested him for cocaine possession.

In an effort to establish the existence of mitigating circumstances, Swann presented the testimony of Dr. Samenow and Dr. Ryans. Dr. Samenow's testimony concerned his evaluation of Swann and his review of Swann's medical records, which indicated that Swann's mental condition had been successfully controlled with antipsychotic medication. Dr. Samenow opined that Swann "could function and perform satisfactorily in a structured environment where his medications are administered and controlled." J.A. 270.

Dr. Ryans, the psychiatrist, testified about his prior treatment of Swann. Specifically, Dr. Ryans expressed his opinion that Swann had "a chronic undifferentiated schizophrenia," J.A. 176, and explained that the treatment for Swann's condition was antipsychotic medication. Dr. Ryans also testified that during Swann's prior hospitalizations, Swann responded very well to antipsychotic medication and was successfully returned to a state of remission and "very normal" behavior. J.A. 180. Finally, Dr. Ryans offered extensive testimony concerning the dosage of medication prescribed for Swann, the relationship between the dosage and the severity of Swann's condition, the relationship between the dosage and the probable length of time before a relapse would occur, and the side effects of the medication.

B.

Before addressing the merits of Swann's Ake claim, we must resolve two preliminary matters. First, we must determine whether Swann's claim is barred as a consequence of his failure to present the claim in his state habeas petition. Second, we must decide whether the limitations upon federal habeas relief set forth in 28 U.S.C.

7

§ 2254(d) govern our analysis of the claim or whether we must review the claim de novo.

1.

The Commonwealth contends that we may not review the merits of Swann's Ake claim because he defaulted the claim in state court by failing to present it in his state habeas petition. We disagree. Swann presented his Ake claim to the Virginia Supreme Court on direct appeal. Thus, he was not required then to present the claim on state habeas in order to preserve a federal habeas forum. See Castille v. Peoples, 489 U.S. 346, 350 (1989).

2.

As amended by § 104 of the AEDPA, § 2254 imposes limitations upon federal habeas relief with respect to a federal claim adjudicated on the merits in state court and subsequently presented to a federal court in a § 2254 application. In particular, the amended statute prohibits federal habeas relief on any claim"adjudicated on the merits in State court proceedings," 28 U.S.C.A. § 2254(d), unless that adjudication resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.A. § 2254(d)(1)-(2).

Swann argues that his federal constitutional claim under Ake was not "adjudicated on the merits in State court proceedings" within the meaning of § 2254(d), because the Virginia Supreme Court based its ruling explicitly and exclusively on state-law grounds. Swann thus contends that our analysis of his Ake claim is not governed by the § 2254(d) limitations upon federal habeas relief. The Commonwealth argues in opposition that § 2254(d) controls, notwithstanding the lack of reference to federal authority or to the United States Constitution in the Virginia Supreme Court's analysis, because the court considered the appropriate factors under Ake in determining that Swann was not entitled to the appointment of a psychiatrist.

8

We recognize that § 2254(d) may govern the disposition of a federal constitutional claim even though the state court's analysis of that claim refers solely to state law. See Green v. French, 143 F.3d 865, 885 n.4 (4th Cir. 1998). For example, in Green , the court held that a § 2254 applicant's federal constitutional claim that the North Carolina trial court coerced the jury into imposing his death sentence was "adjudicated on the merits" within the meaning of § 2254(d), despite the North Carolina Supreme Court's failure to mention the United States Constitution or any federal precedent, including the controlling precedent of Lowenfield v. Phelps, 484 U.S. 231 (1988). See Green, 143 F.3d at 885 n. 4. Although acknowledging that it was "somewhat unclear whether Green's federal claim under Lowenfield was presented to and adjudicated by the North Carolina Supreme Court," we ultimately determined that § 2254(d) controlled because the North Carolina Supreme Court "apparently applied Lowenfield's `totality of the circumstances test,'" and also "relied upon its own precedents which, in turn, cited to and relied upon federal precedents falling within the Lowenfield line of cases." Green, 143 F.3d at 885 n. 4.

Having reviewed the opinion of the Virginia Supreme Court in the present matter, however, we are satisfied that Swann's Ake claim was not "adjudicated on the merits" within the meaning of § 2254(d). Unlike the situation presented in Green, the Virginia Supreme Court's disposition of Swann's claim that he was entitled to the appointment of a psychiatrist does not mention or appear to apply the controlling federal precedent of Ake, nor does it cite or rely upon state precedents that, in turn, cite or rely upon Ake. Rather, the Virginia Supreme Court, after reviewing the trial testimony of Drs. Samenow and Ryans, concluded only that the trial court's refusal to appoint a psychiatrist did not constitute an abuse of discretion under Va. Code Ann. § 19:2-264.3:1. Under these circumstances, we conclude that the § 2254(d) limitations upon federal habeas relief do not govern our analysis of Swann's claim under Ake.

C.

We now turn to the merits of the claim. Swann first contends that Ake literally mandated the appointment of a psychiatrist, as opposed to a clinical forensic psychologist, to evaluate him and to render conclusions on issues pertaining to his mental condition, such as compe-

9

tency to stand trial, sanity at the time of the offense, and future dangerousness. The logical implication of this contention is that the appointment of a mental health expert other than a psychiatrist automatically violates the due-process rights of an indigent criminal defendant whose sanity or future dangerousness is to be a significant factor at trial.

In the alternative, Swann contends that even if Ake did not literally mandate the appointment of a psychiatrist, such an appointment was mandated under the particular circumstances of this case. Swann supports this contention by referring to the fact that he had been treated in the past with antipsychotic medication for a serious mental illness, namely chronic undifferentiated schizophrenia. Swann argues that his mental history raised issues of medication, dosage, and effects of non-compliance with medication, which can be properly addressed only by a psychiatrist. Swann thus argues that Dr. Samenow, as a clinical forensic psychologist, lacked the qualifications necessary to address those issues.

1.

Because Ake did not mandate the appointment of a psychiatrist either literally or under the circumstances of this case, we conclude that Swann's right to due process under Ake was not violated. Contrary to Swann's contention that the appointment of a mental health expert other than a psychiatrist automatically violates Ake, we have established that a state may satisfy its constitutional obligation under Ake with the appointment of a competent psychologist. See Wilson v. Greene, 155 F.3d 396, 401 (4th Cir. 1998) (holding that Ake requires a state to ensure that a defendant has access "to a psychiatrist or psychologist, not with guaranteeing a particular substantive result.") (emphasis added). The Commonwealth satisfied its constitutional obligation under Ake, therefore, when Dr. Samenow fulfilled the responsibilities contemplated by Ake, i.e., to evaluate Swann, to assess his sanity at the time of the offense, and to assist with the presentation of mitigation evidence. See Ake, 470 U.S. at 82-84.

Furthermore, we conclude that Ake did not mandate the appointment of a psychiatrist in the present case, because Dr. Samenow possessed the qualifications necessary to fulfill his responsibilities.

10

Although indicating in a brief letter to the trial court that he was not qualified medically to render an opinion on issues of medication "surrounding hospitalization and other aspects of [Swann's] functioning," J.A. 42, Dr. Samenow in no way suggested that he was not qualified to assess Swann's competency to stand trial or to assess Swann's sanity at the time of the offense. Swann, in fact, noted in his motion for the appointment of a psychiatrist that he did not seek "to obtain a more favorable report." J.A. 40. Moreover, Swann elicited no statements from Dr. Ryans or any other expert to the effect that Dr. Samenow, as a clinical forensic psychologist, was not qualified to render an opinion on such matters. Lastly, Dr. Samenow did not testify at trial that he was not qualified to assess the likely success of Swann's treatment with antipsychotic medication in the future. Indeed, Dr. Samenow testified that Swann's condition had been successfully controlled with antipsychotic medication in the past, and that Swann may again respond well to such medication in a structured environment. We thus have no basis to conclude that Dr. Samenow lacked the qualifications necessary to testify on the issue of Swann's future dangerousness.

2.

In support of his position that Ake mandated the appointment of a psychiatrist under the particular circumstances of this case, Swann relies primarily upon an affidavit that he procured only after he filed the present application in the district court. The affidavit in question was prepared by Dr. Mark Mills ("Dr. Mills"), a psychiatrist. Dr. Mills opines in the affidavit that, for various reasons, a "psychiatrist was necessary to determine [Swann's] trial competence, the mental processes that had occurred at and around the time of the offense, the mental processes that operated during Mr. Swann's confession, and whether Mr. Swann would be a future danger." J.A. 1014-15.

We decline to consider the Mills affidavit in our disposition of Swann's Ake claim because Swann failed to present that affidavit at any point during the proceedings in the state courts of Virginia, and he offers no explanation for that failure in the present appeal. State prisoners are encouraged to develop all material facts in state court in the interests of finality, comity, judicial economy, and a resolution of issues in the most appropriate forum. See Keeney v. Tamayo-Reyes,

11

504 U.S. 1, 8 (1992). Those interests would be frustrated if a federal court reviewing a habeas application considered evidence that the applicant never sought to obtain and offer in state court, even though such evidence was available. A federal court's refusal to consider such evidence, on the other hand, advances the above interests by encouraging state prisoners to obtain and offer all available evidence during the pendency of state proceedings.

Furthermore, we conclude that the allegations set forth in the Mills affidavit do not entitle Swann to an evidentiary hearing in federal court on his Ake claim. Section 2254, as amended by § 104 of the AEDPA, imposes limitations upon the ability of a§ 2254 applicant to obtain an evidentiary hearing in federal court. Specifically, if an "applicant has failed to develop the factual basis of a claim in State court proceedings," 28 U.S.C.A. § 2254(e)(2), a federal court is prohibited from conducting an evidentiary hearing on that claim unless the applicant demonstrates that:

> (A) the claim relies on----
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C.A. § 2254(e)(2)(A)-(B) (emphasis added).

In accordance with the foregoing framework, a district court presented with a request for an evidentiary hearing must first ascertain whether the "applicant has failed to develop the factual basis of a claim in State court proceedings." 28 U.S.C.A.§ 2254(e)(2); see

12

Cardwell v. Greene, 152 F.3d 331, 337 (4th Cir. 1998). If so, the statute prohibits an evidentiary hearing on the claim in question unless the applicant makes the requisite demonstration under § 2254(e)(2)(A) and (B). See id. However, an applicant has not "failed" within the meaning of § 2254(e)(2) if the applicant "has diligently sought to develop the factual basis of a claim for habeas relief, but has been denied the opportunity to do so by the state court." Id. Once we determine that § 2254(e)(2) does not prohibit an evidentiary hearing in federal court, an evidentiary hearing would be permitted only if Swann has "allege[d] additional facts that, if true, would entitle him to relief" on his claim. Cardwell, 152 F.3d at 338 (internal quotation marks omitted).

We find that Swann "failed to develop the factual basis" of his Ake claim within the meaning of § 2254(e)(2), because he did not present the Mills affidavit at any point during the proceedings in the state courts of Virginia. Furthermore, we have no basis upon which to conclude that the state courts of Virginia denied Swann the opportunity to offer the Mills affidavit or otherwise develop the factual basis of his claim. See Cardwell, 152 F.3d at 337. Section 2254(e)(2) thus prohibits an evidentiary hearing in federal court on the Ake claim unless Swann can make the requisite demonstration under§ 2254(e)(2)(A) and (B). We are convinced that he cannot do so. The Supreme Court's decision in Ake was rendered in 1985 and thus Swann's claim does not rely upon "a new rule of constitutional law." 28 U.S.C.A. § 2254(e)(2)(A)(i). In addition, Swann cannot establish that his Ake claim relies upon "a factual predicate that could not have been previously discovered through the exercise of due diligence[.]" 28 U.S.C.A. § 2254(e)(2)(A)(ii). Indeed, the factual predicate for the claim had been discovered prior to the commencement of trial.

D.

We further conclude that Swann would not be entitled to federal habeas relief on his Ake claim even if the trial court's refusal to appoint a psychiatrist gave rise to a constitutional violation. The Supreme Court has held that "in determining whether habeas relief must be granted because of constitutional error of the trial type," Brecht v. Abrahamson, 507 U.S. 619, 638 (1993), the relevant harmless-error inquiry is "whether the error had substantial or injuri-

13

ous effect or influence in determining the jury's verdict," id. at 637 (internal quotation marks omitted). We have expressly determined that Ake errors are amenable to this analysis. See Tuggle v. Netherland, 79 F.3d 1386, 1387-88 (4th Cir. 1996). We must therefore determine whether the trial court's refusal to appoint a psychiatrist had a substantial or injurious effect or influence on the jury's decision to fix Swann's punishment at death. See Brecht, 507 U.S. at 638. We conclude that it did not.

Swann had requested the appointment of a psychiatrist to assist him in presenting evidence relating to medications for schizophrenia and the effects of such medication on him. In so doing, Swann expressed a preference for Dr. Ryans, who had previously treated Swann with such medication during his prior hospitalizations. Although the trial court refused to appoint him, Dr. Ryans did testify at trial and the jury benefitted from his explanation of the nature of Swann's condition, the types, dosage, and side effects of the antipsychotic medication prescribed for his condition, the success of this treatment in the past, and the likely effects of noncompliance with such medication. Before recommending that Swann receive a sentence of death, therefore, the jury considered Dr. Ryans's testimony despite the trial court's refusal to appoint him.

Swann nevertheless contends that his presentation of mitigation evidence was prejudiced by the trial court's refusal to appoint Dr. Ryans, because Dr. Ryans testified without having recently conducted an evaluation of Swann.[3] At trial, however, Dr. Ryans testified at length about his extensive personal treatment of Swann's condition in the past and the results achieved, and indicated that he was familiar with the medical records of those who subsequently treated Swann. Moreover, Swann's failure to proffer additional testimony that he may have elicited from Dr. Ryans had a recent evaluation been conducted suggests that Dr. Ryans provided complete and competent testimony, albeit not at the Commonwealth's expense. Under these circumstances, we conclude that the trial court's refusal to appoint Dr. Ryans

_____

[3] In support of this position, Swann relies primarily upon statements offered by Dr. Mills in the Mills affidavit. For the reasons set forth earlier, however, we will not consider these statements and we find that they do not entitle Swann to an evidentiary hearing on his Ake claim.

14

did not have the requisite substantial or injurious effect or influence on the jury's decision to fix Swann's punishment at death. See Brecht, 507 U.S. at 638. Therefore, Swann would not be entitled to federal habeas relief even if his constitutional rights under Ake had been violated.

III.

Swann asserts that his right to trial by an impartial jury under the Sixth and Fourteenth Amendments was violated as a consequence of jury misconduct that ensued during the jury's penalty deliberations. The specific allegations offered in support of this claim are derived entirely from an affidavit prepared by Doris Pye ("Pye"), a private investigator. Pye affirms in her affidavit that during July and August 1995, she interviewed eleven of the twelve individuals comprising the jury in Swann's trial.

A.

The first of Swann's allegations of jury misconduct concerns Juror Davis and evidence presented during the penalty phase of the trial that Swann stole lawnmowers from a Wal-Mart store in June 1992. According to the Pye affidavit, Davis realized during the trial that she was employed at that particular store and present at the time of the thefts. Davis recounted for the other jurors her experience of going to the part of the store where the lawnmowers were kept at the time when Swann would have been stealing them, but "something told her not to open the door." J.A. 501. She then stated to the jurors that "[i]t could have been me." J.A. 502. Although Davis shared this information with the other jurors, she did not disclose it to the trial court.

The second of Swann's allegations of jury misconduct concerns Juror Williams and evidence presented at trial concerning Terry Williams. During the guilt phase of the trial, the jury heard a recording of Swann discussing a burglary that he committed with Terry Williams. The victim of that burglary testified during the penalty phase and mentioned Terry Williams by name. Coincidentally, Juror Williams served on the jury that found Terry Williams guilty of capital murder and recommended that he be sentenced to death. Moreover, the trial judge and prosecutor in the Terry Williams trial were the

15

same as in the Swann trial. Juror Williams was not questioned about his prior jury service during voir dire, and he did not disclose his jury service in the Terry Williams case to the trial court.

Swann alleges further that the jurors, during their penalty deliberations, improperly considered whether Swann would ever become eligible for parole if he did not receive a sentence of death. According to the Pye affidavit, several jurors speculated as to the amount of time that Swann would actually serve in prison if only a sentence of life imprisonment were imposed. One juror apparently desired to vote for a sentence of life imprisonment without parole, but the trial court had instructed the jurors that such a verdict was not an option.

B.

Based upon the foregoing allegations, Swann contends that he is entitled to an evidentiary hearing on his jury-misconduct claim. Accordingly, we must first ascertain whether Swann"failed to develop the factual basis" of the claim in the state courts of Virginia. 28 U.S.C.A. § 2254(e)(2). If Swann clears the§ 2254(e)(2) hurdle, an evidentiary hearing would be permitted only if he has "allege[d] additional facts that, if true, would entitle him to relief" on his claim. Cardwell, 152 F.3d at 338 (internal quotation marks omitted).

Swann requested an evidentiary hearing in connection with his state habeas petition, in which he presented the jury-misconduct claim and offered the Pye affidavit as evidentiary support. The Virginia Supreme Court, however, summarily dismissed the petition without conducting a hearing and determined that the jury-misconduct claim had "no merit." J.A. 773. Under these circumstances, we find that § 2254(e)(2) does not prohibit an evidentiary hearing in federal court on Swann's jury-misconduct claim because he diligently sought to develop the factual basis of that claim in the Virginia Supreme Court, but was denied the opportunity to do so. See id. at 337-38 (holding that § 2254(e)(2) did not prohibit an evidentiary hearing in federal court on a claim brought by a federal habeas applicant whom the Virginia Supreme Court denied an evidentiary hearing in state habeas proceedings).

Because Swann has cleared the § 2254(e)(2) hurdle, we may proceed to the issue of whether the allegations set forth in the Pye affida-

16

vit would, if true, entitle Swann to federal habeas relief on his jury-misconduct claim. See Cardwell, 152 F.3d at 338. We are satisfied that Swann would not be so entitled to federal habeas relief on this claim and thus deny his request for an evidentiary hearing.

C.

As mentioned earlier, § 2254 imposes limitations upon habeas relief with respect to a federal claim adjudicated on the merits in state court and subsequently presented to a federal court in a § 2254 application. In particular, federal habeas relief is prohibited on any claim "adjudicated on the merits in State court proceedings," unless that adjudication resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.A. § 2254(d)(1)-(2).

Exploring the meaning of the phrases "contrary to" and "unreasonable application of" as they appear in § 2254(d)(1), we have determined that § 2254(d)(1) authorizes federal habeas relief on a claim presented by a § 2254 applicant who demonstrates that the state court's rejection of that claim is in square conflict with directly controlling Supreme Court precedent. See Green, 143 F.3d at 870, 880. In the absence of such a controlling precedent, the applicant must demonstrate either that "the state court's resolution of a question of pure law rests upon an objectively unreasonable derivation of legal principles from the relevant supreme court precedents," or that the state court's decision "rests upon an objectively unreasonable application of established principles to new facts." Id. at 870. The ultimate § 2254(d)(1) inquiry is whether "the state courts have decided the question by interpreting or applying the relevant[Supreme Court] precedent in a manner that reasonable jurists would all agree is unreasonable." Id.**4**

_____

**4** Swann challenges the constitutionality of the limitations upon federal habeas relief imposed by § 2254(d)(1) and construed in Green. In particular, Swann asserts that those limitations violate both Article III and the Suspension Clause of the United States Constitution. However, as we recently noted in Williams v. Taylor, 163 F.3d 860, 865 n. 3 (4th Cir. 1998), these identical challenges were presented and rejected in Green. See Green, 143 F.3d at 874-76.

17

We have established that the Virginia Supreme Court's summary dismissal of a state habeas petition constitutes a § 2254(d) "adjudicat-[ion] on the merits" with respect to those claims specifically designated in the dismissal order as having "no merit." See Cardwell, 152 F.3d at 339 (concluding from review of summary order that applicant's claim "was adjudicated `on the merits' and not disposed of on procedural grounds."); see also Wright, 151 F.3d at 156-57 (4th Cir. 1998) (holding that summary dismissal "was clearly an adjudication in which some claims were rejected pursuant to procedural default, while others were decided on the merits."). Accordingly, we apply the strictures of § 2254(d) to Swann's jury-misconduct claim in light of the Virginia Supreme Court's express determination that the claim has "no merit." See Cardwell, 152 F.3d at 339-40. We may not grant federal habeas relief on the claim, therefore, unless Swann demonstrates that the Virginia Supreme Court's rejection thereof resulted from interpreting or applying the relevant Supreme Court precedents "in a manner that reasonable jurists would all agree is unreasonable." Green, 143 F.3d at 870. Because the claim was rejected in summary fashion, we conduct an "independent review of the applicable law" to determine whether Swann has made the requisite demonstration. Wright, 151 F.3d at 157.

Swann cites numerous Supreme Court precedents in support of his position that his constitutional right to trial by an impartial jury was violated as a consequence of jury misconduct. He fails to demonstrate, however, that any of these precedents are a directly controlling Supreme Court precedent with which the Virginia Supreme Court's rejection of the claim squarely conflicts. See Green, 143 F.3d at 870, 880. Moreover, he does not demonstrate that the Virginia Supreme Court applied an established principle from a Supreme Court decision to the facts of the present case in an objectively unreasonable manner. See id. at 870. Rather, Swann asserts in conclusory fashion that "denying relief under these circumstances is contrary to and an unreasonable application of United States Supreme Court law." Brief of Appellant at 31. Such an assertion is hardly sufficient to sustain his burden of establishing that the Virginia Supreme Court decided the question by interpreting or applying the relevant Supreme Court precedent "in a manner that reasonable jurists would all agree is unreasonable." Green, 143 F.3d at 870. Under these circumstances, we are

18

satisfied that § 2254(d) prohibits federal habeas relief on Swann's jury-misconduct claim.

D.

Even if Swann could surmount § 2254(d) and demonstrate that the alleged jury misconduct gave rise to a constitutional violation, we would still conclude that he is not entitled to federal habeas relief on his claim. The Brecht harmless-error analysis applies to allegations of jury misconduct presented in a federal habeas application when the error involved is not structural in nature. See Sherman v. Smith 89 F.3d 1134, 1141-42 (4th Cir. 1996) (en banc). We believe that any jury-related error in the present matter can "be quantitatively assessed in the context of other evidence presented" to determine whether its occurrence was harmless. Arizona v. Fulminante , 499 U.S. 279, 308 (1991). We thus explore whether the alleged acts of misconduct committed by the jurors in the course of the penalty deliberations in Swann's trial "had a substantial or injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 638 (internal quotation marks omitted).

As mentioned earlier, the jury's decision to fix Swann's punishment at death was predicated upon a finding of future dangerousness. See Va. Code Ann. § 19.2-264.4.C. At trial, the Commonwealth supported that finding with evidence proving a pattern of violent attacks committed by Swann. In particular, the jury learned that Swann robbed individuals at a fast-food restaurant, struck an individual while participating in burglary and grand larceny, hit a woman on the head with a brick after breaking into her home, shot at a woman and hit her on the head with a gun in the course of robbing her pocketbook, and assaulted a police officer after being arrested. Perhaps most devastating to Swann was the underlying offense, in which Swann, in search of cocaine money, entered Richter's house armed with a shotgun and murdered him.

In light of the foregoing evidence, we are convinced that Swann's allegations that the jurors discussed the information shared by Jurors Williams and Davis, and also discussed Swann's parole eligibility, did not contribute in any significant way to their ultimate finding of a probability that Swann "would commit criminal acts of violence that

19

would constitute a continuing serious threat to society." Va. Code Ann. § 19.2-264.4.C. We conclude, therefore, that the acts of jury misconduct alleged by Swann amount to harmless error under Brecht. Swann thus would not be entitled to federal habeas relief and, accordingly, we deny his request for an evidentiary hearing on his jury-misconduct claim.

IV.

Swann contends that his right to effective assistance of counsel under the Sixth and Fourteenth Amendments was violated as a result of his trial counsel's failure: (1) to explore the prospective jurors' prior jury service on voir dire, or (2) to object to evidence and argument offered by the Commonwealth that Terry Williams had been sentenced to death. Swann presented this ineffectiveness claim in his state habeas petition before the Virginia Supreme Court, which summarily rejected the claim as having "no merit." J.A. 773.

In light of the Virginia Supreme Court's express determination that Swann's ineffectiveness claim lacks merit, our analysis is governed by § 2254(d). See Cardwell, 152 F.3d at 339. Accordingly, we may not grant federal habeas relief on the ineffectiveness claim unless Swann demonstrates that the Virginia Supreme Court's rejection of the claim resulted from interpreting or applying the relevant Supreme Court precedents "in a manner that reasonable jurists would all agree is unreasonable." Green, 143 F.3d at 870. Because the claim was rejected in summary fashion, we must conduct an "independent review of the applicable law" to determine whether Swann can make the requisite demonstration. Wright, 151 F.3d at 157.

To prevail on his ineffectiveness claim, Swann must satisfy two well-established requirements set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). Swann must first demonstrate that the performance of his counsel "fell below an objective standard of reasonableness." Id. at 688. If successful in that regard, Swann must then demonstrate that counsel's deficient performance was prejudicial. See id. at 691-94. In articulating these requirements, the Court emphasized the following:

> [A] court need not determine whether counsel's performance was deficient before examining the prejudice suf-

20

fered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, <u>that course should be followed</u> .

<u>Id</u>. at 697 (emphasis added).

With respect to the prejudice prong, <u>Strickland</u> instructed that an ineffectiveness claimant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id</u>. at 694. However, the Supreme Court has since clarified the prejudice inquiry in <u>Lockhart v. Fretwell</u>, 506 U.S. 364 (1993), requiring an ineffectiveness claimant to demonstrate that the result of his trial was"fundamentally unfair or unreliable," <u>id</u>. at 369; <u>see Williams v. Taylor</u>, 163 F.3d 860, 869 (4th Cir. 1998) ("[T]he standard for prejudice set forth in <u>Lockhart</u> is not an exception to the <u>Strickland</u> standard, but rather a clarification."); <u>see also Sexton v. French</u> , 163 F.3d 874, 882 (4th Cir. 1998) (explaining that <u>Lockhart</u> requires an ineffectiveness claimant to demonstrate that his trial was "fundamentally unfair or unreliable" in order to satisfy the <u>Strickland</u> prejudice prong).

We are satisfied that the Virginia Supreme Court could reasonably conclude that Swann's ineffectiveness claim fails simply because he cannot demonstrate that prejudice resulted from the allegedly deficient performance of counsel. Even if his counsel's performance fell below an objective standard of reasonableness, there is virtually no basis upon which to conclude that the result of either phase of the trial was fundamentally unfair or unreliable. <u>See Lockhart</u>, 506 U.S. at 369. The jury's finding that Swann was guilty on the charges of capital murder and robbery was supported by extensive evidence, which included a written confession. Similarly, there was overwhelming evidence to support the jury's finding of future dangerousness, upon which Swann's death sentence was based.

Under these circumstances, we are satisfied that Swann did not meet his burden of demonstrating that the Virginia Supreme Court's rejection of his ineffectiveness claim resulted from applying <u>Strickland</u> and <u>Lockhart</u> "in a manner that reasonable jurists would all

21

agree is unreasonable." Green, 143 F.3d at 870. Federal habeas relief on that claim is thus prohibited under § 2254(d).

V.

Swann presents two claims arising from the jury's viewing of the crime scene during the guilt phase of the trial, when Swann was present but allegedly wearing leg shackles. First, Swann claims that he was deprived of his right to a fair trial because several jurors noticed the leg shackles at the viewing. Second, Swann claims that his trial counsel was ineffective for failing to object to his wearing of the leg shackles in the presence of the jury.

A.

In his state habeas petition, Swann supported his request for an evidentiary hearing on the above claims by offering the aforementioned Pye affidavit, in which Pye affirms that at least four of the jurors "stated that [Swann] was in leg shackles during the jury visit to the crime scene." J.A. 499. The Commonwealth responded by offering affidavits from Swann's trial counsel and a deputy sheriff of the Danville Sheriff's Department, both of whom stated that: (1) Swann was not wearing leg shackles, and (2) measures were taken to ensure that the jurors could not see the "sand-filled leg weights" that Swann wore on his lower legs. J.A. 704-05, 710.

The Virginia Supreme Court, without conducting a hearing, denied relief as to both claims. Swann argues on appeal that the conflicting affidavits give rise to factual disputes that warrant an evidentiary hearing. He argues further that if those disputes were resolved in his favor, he would be entitled to relief on his claims. In opposition, the Commonwealth maintains that Swann's right to an evidentiary hearing is barred under § 2254(e)(2) on the basis that Swann "failed to develop the factual basis" of the claims in the state courts of Virginia.

We conclude that § 2254(e)(2) does not prohibit an evidentiary hearing on Swann's "leg shackle" claims, because he diligently sought to develop the factual basis of the claims in the Virginia Supreme Court by requesting an evidentiary hearing in connection

22

with his state habeas petition. See Cardwell, 152 F.3d at 337-38. Because Swann has cleared the § 2254(e)(2) hurdle, we may proceed to the issue of whether the allegations set forth in the Pye affidavit would, if true, entitle Swann to federal habeas relief on either or both of his "leg shackle" claims. See id. at 338.

1.

Swann's claim that he was deprived of his right to a fair trial because several jurors noticed the shackles at the viewing was not raised during trial or on direct appeal to the Virginia Supreme Court. Rather, Swann initially presented the claim in his state habeas petition before the Virginia Supreme Court, which determined that consideration of the merits of the claim was barred under Slayton. The Commonwealth argues that we may not reach the merits of the claim as a consequence of procedural default in the state courts of Virginia. We agree.

The Supreme Court has established that when a § 2254 applicant defaults a claim in state court pursuant to an adequate and independent state procedural rule, federal habeas review of that claim is barred unless the applicant demonstrates "cause for the default and actual prejudice as a result of the alleged violation of federal law," or demonstrates that refusal to consider the claim "will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991); see Harris v. Reed, 489 U.S. 255, 262 (1989). The Slayton rule, which the Virginia Supreme Court consistently applies to bar state habeas consideration of claims not raised on direct appeal, constitutes an adequate and independent state-law ground for decision. See Wright, 151 F.3d at 159-60.

Because Swann defaulted his claim in state court pursuant to an adequate and independent state procedural rule, we may not address the merits of the claim unless he can demonstrate cause for the default and prejudice resulting from the purported constitutional violation, or unless he can demonstrate that our refusal to consider the claim will result in a fundamental miscarriage of justice. See Coleman, 501 U.S. at 750. Because Swann does not even attempt to make the requisite showing, we conclude that federal habeas relief on this claim is

23

barred. We thus deny his request for an evidentiary hearing on that claim. See Cardwell, 152 F.3d at 338.

2.

The second claim is that Swann's trial counsel was ineffective for failing to object to his wearing of the shackles in the presence of the jury. The Virginia Supreme Court, on Swann's state habeas petition, rejected this claim as having "no merit." J.A. 773. Again, we apply the strictures of § 2254(d), see Cardwell , 152 F.3d at 339, requiring Swann to demonstrate that the Virginia Supreme Court's rejection of the claim resulted from applying the relevant Supreme Court precedents "in a manner that reasonable jurists would all agree is unreasonable," Green, 143 F.3d at 870. We conduct "an independent review of the applicable law" in determining whether Swann can make the requisite demonstration. Wright, 151 F.3d at 157.

In the present matter, Swann alleges that several jurors observed him wearing leg shackles during the viewing of the crime scene. Even if counsel's failure to object to the wearing of the leg shackles "fell below an objective standard of reasonableness," Strickland, 466 U.S. at 688, the Virginia Supreme Court could reasonably conclude that Swann's ineffectiveness claim fails because of a lack of sufficient prejudice. Given the extensive evidence of Swann's guilt and of his future dangerousness, see Va. Code § 19.2-264.4.C, there is virtually no basis upon which Swann can argue that the result of either phase of the trial proceedings was fundamentally unfair or unreliable. See Lockhart, 506 U.S. at 369.

Under these circumstances, we are satisfied that Swann cannot meet his burden of demonstrating that the Virginia Supreme Court's adjudication of Swann's ineffectiveness claim resulted from applying either Strickland or Lockhart in an unreasonable manner. See Green, 143 F.3d at 870. Because federal habeas relief is thus prohibited under § 2254(d), we deny Swann's request for an evidentiary hearing on the ineffectiveness claim. See Cardwell, 152 F.3d at 338.

VI.

Swann asserts in two separate claims that his execution would violate the Eighth and Fourteenth Amendments in light of his current

24

mental condition. He relies primarily upon Ford v. Wainwright, 477 U.S. 399 (1986), in which the Supreme Court held that a state is constitutionally prohibited "from inflicting the penalty of death upon a prisoner who is insane," id. at 410 (emphasis added). Swann alleges in his first such Ford claim that he is "not competent to be executed" and thus his execution would be unconstitutional. J.A. 968. In a second Ford claim, Swann alleges that he is "severely mentally ill," J.A. 971, and contends that the rationale for Ford 's prohibition against the execution of a prisoner who is insane applies with equal force to the execution of one who is severely mentally ill.

Swann did not challenge his competency to be executed at trial or on direct appeal to the Virginia Supreme Court. In his state habeas petition, however, he presented the claim that he is severely mentally ill and thus not competent to be executed under Ford. The Virginia Supreme Court, applying Slayton, determined that the claim was procedurally defaulted "to the extent the claim is based on [Swann's] mental state at the time of trial." J.A. 772.

After the magistrate judge recommended that federal habeas relief be denied on both Ford claims as a consequence of procedural default in the state courts of Virginia, Swann objected on the ground that he could not be required to raise those claims until his execution became imminent. The district court, finding no authority supporting the proposition that a prisoner need not raise a Ford claim until execution becomes imminent, overruled Swann's objection. On appeal, Swann argues that the procedural-default rulings on his Ford claims no longer bear significance in light of Stewart v. Martinez-Villareal, 118 S. Ct. 1618 (1998), which the Supreme Court decided after the district court entered judgment denying the present application.

In Martinez-Villareal, a state prisoner brought a § 2254 application presenting various claims, including a Ford claim challenging his competency to be executed. The district court dismissed the Ford claim without prejudice as premature, and the remaining claims presented in the application were ultimately denied. After the State obtained an execution warrant and Martinez-Villareal was determined in state court to be competent to be executed, Martinez-Villareal moved to reopen the Ford claim presented in his earlier § 2254 application. The district court, however, denied Martinez-Villareal's

25

motion to reopen under 28 U.S.C. § 2244(b)(1) (West Supp. 1998), a gatekeeping provision of the AEDPA directing that"[a] claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed." The Court of Appeals for the Ninth Circuit, on Martinez-Villareal's motion for leave to file a second or successive § 2254 application, held that § 2244(b) did not apply to Martinez-Villareal's Ford claim. See Martinez-Villareal v. Stewart, 118 F.3d 628, 629 (9th Cir. 1997) (per curiam).

The Supreme Court affirmed the Ninth Circuit's determination that Martinez-Villareal's motion to reopen the Ford claim presented in his earlier § 2254 application was not subject to the § 2244(b) restriction on "second or successive" applications. Martinez-Villareal, 118 S. Ct. at 1619. In so ruling, the Court analogized the situation of Martinez-Villareal, whose Ford claim was dismissed without prejudice as premature, to the situation of a state prisoner whose§ 2254 application was dismissed without prejudice for failure to exhaust state remedies:

> True, the cases are not identical; [Martinez-Villareal's] Ford claim was dismissed as premature, not because he had not exhausted state remedies, but because his execution was not imminent and therefore his competency to be executed could not be determined at that time. But in both situations, the habeas petitioner does not receive an adjudication of his claim. To hold otherwise would mean that a dismissal of a first habeas petition for technical procedural reasons would bar the prisoner from ever obtaining federal habeas review.

Martinez-Villareal, 118 S. Ct. at 1622.

The Court's ultimate determination on the applicability of § 2244(b) to Martinez-Villareal's Ford claim was guided by two propositions. First, a Ford claim does not ripen for resolution until execution is imminent because an individual's competency to be executed cannot properly be assessed until that time. See Martinez-Villareal, 118 S. Ct. at 1622 ("[Martinez-Villareal] brought his [Ford] claim in a timely fashion, and it has not been ripe for resolution until now."). Second, a federal habeas applicant is entitled to an adjudica-

26

tion on the merits in federal district court as to each claim presented in an <u>initial</u> § 2254 application, in spite of § 2244(b):

> This may have been the second time that [Martinez-Villareal] had asked the federal courts to provide relief on his <u>Ford</u> claim, but this does not mean that there were two separate applications, the second of which was necessarily subject to § 2244(b). There was only one application for <u>habeas</u> relief, and the District Court ruled (or should have ruled) on each claim at the time it became ripe.[Martinez-Villareal] was entitled to an adjudication of all of the claims presented in his earlier, undoubtedly reviewable, application for federal <u>habeas</u> relief.

<u>Id</u>. at 1621. Combining these propositions, the Court concluded that § 2244(b) does not bar the reopening of a <u>Ford</u> claim presented in an initial § 2254 application and dismissed without prejudice as premature. Had the Court held to the contrary, even a <u>Ford</u> claim presented in an initial § 2254 application would be rejected under § 2244(b) as a "second or successive <u>habeas corpus</u> application" because the Court anticipated that any <u>Ford</u> claim would ripen and be adjudicated only after the disposition of the application in which it was presented.

Although <u>Martinez-Villareal</u> does not expressly mandate that a <u>Ford</u> claim presented in an initial § 2254 application by a capital prisoner whose execution is not imminent be dismissed without prejudice as premature and then revisited once execution becomes imminent, the Court unquestionably endorsed such an approach in its disposition. We shall, therefore, use that approach in our disposition of the present matter by remanding with instructions to dismiss Swann's <u>Ford</u> claims without prejudice, thereby allowing him to reopen those claims after his execution becomes imminent and he has exhausted any available remedies in the state courts of Virginia.

We understand that the consequence of our disposition will be to afford Swann the opportunity to renew a portion of his <u>habeas</u> application. This is, however, precisely the scenario contemplated by the

27

Supreme Court in <u>Martinez-Villareal</u>, notwithstanding § 2244(b)'s explicit restrictions against "second or successive" § 2254 applications.[5]

We emphasize that our decision to direct the dismissal without prejudice of Swann's <u>Ford</u> claims is derived from our interpretation of <u>Martinez-Villareal</u> regarding the proper disposition of a <u>Ford</u> claim presented in an <u>initial</u> § 2254 application. The Supreme Court expressly declined to decide whether a § 2254 application presenting a <u>Ford</u> claim is "second or successive" within the meaning of § 2244(b) when the applicant in question failed to present that claim in a previously adjudicated § 2254 application. See <u>Martinez-Villareal</u>, 118 S. Ct. at 1622 n. * ("This case does not present the situation where a prisoner raises a <u>Ford</u> claim for the first time in a petition filed after the federal courts have already rejected the prisoner's initial <u>habeas</u> application. Therefore, we have no occasion to decide whether such filing would be a `second or successive <u>habeas corpus</u> application' within the meaning of AEDPA."). Likewise, we reserve that issue for another day.

VII.

For the foregoing reasons, the judgment of the district court denying Swann's § 2254 application for a writ of <u>habeas corpus</u> is affirmed in all respects, except as it relates to his claims that he is not competent to be executed. We remand with instructions that Swann's competency to be executed claims be dismissed without prejudice as premature, and that he be permitted to renew those claims in a subsequent federal <u>habeas</u> proceeding if his execution becomes imminent and he has exhausted any available remedies in the state courts of Virginia.

<u>AFFIRMED IN PART, VACATED IN PART, AND REMANDED</u>
_____

**5** Indeed, Justice Scalia's dissent in <u>Martinez-Villareal</u> criticizes the majority for "reshaping" the AEDPA's requirement of "extraordinary showings before a state prisoner can take a <u>second trip</u> around the extended district-court-to-Supreme-Court federal track." 118 S. Ct. at 1162 (Scalia, J., dissenting) (emphasis added).